Richard A. GUIDDY, Appellant,

v.

Jack TERHUNE, individually and in his official capacity as Director of the New Jersey Department of Corrections; Michael R. McKeen, individually and in his official capacity* as Administrator of Southern State Correctional Facility; Karen Balicki, individually and in her official capacity as Asso. Administrator of Southern State Correctional Facility; Gary Schneider, individually and in his official capacity as Assistant Superintendent of Southern State Correctional Facility; John Doe 1, individually and in their official capacities as correctional officers of the New Jersey Department of Correction; John Doe 2, individually and in their capacities as correctional officers of New Jersey Department of Correction; John Doe 3, individually and in their capacities as correctional officers of New Jersey Department of Correction; John Doe 4, individually and in their official capacities as correctional officers of the New Jersey Department of Correction; John Doe 5, individually and in their capacities as correctional officers of New Jersey Department of Correction; SCO Thorp individually and in their capacities as correctional officers of the New Jersey Department of Correction; John Doe 6, individually and in their capacities as correctional officers of New Jersey Department of Correction; John Doe 7, individually and in their capacities as correctional officers of New Jersey Department of Correction; John Doe 8, individually and in his official capacity as Director of Spectrum Health Care/Correctional Medical Services; John Doe 10, individually and in his capacity as Emergency Room Doctor for Millville Hospital; Doctor Rosman, individually and in their capacities as doctors for Correctional Medical Services; Doctor Ravillo, individually and in their capacities as doctors for Correctional Medical Services; Doctor Cortes, individually and in their capacities as doctors for Cor-

rectional Medical Services; Doctor Kulkarni, individually and in their capacities as doctors for Correctional Medical Services; Cathy Payton, individually and in their capacities as Nurses for Correctional Medical Services; Barbara Roth, individually and in their capacities as Nurses for Correctional Medical Services; Laura May, individually and in their capacities as Nurses for Correctional Medical Services; Ms. Wands, individually and in their capacities as Nurses for Correctional Medical Services; Judy Trout, individually and in their capacities as Nurses for Correctional Medical Services; Jane Doe, individually and in their capacities as Nurses for Correctional Medical Services; John Doe 11, individually and in his official capacity as Director of Medical Services, Department of Corrections

*(Amended see Clerk's Order of 6/28/02).

No. 02–2254.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 6, 2004.

Decided Jan. 15, 2004.

Richard A. Guiddy, pro se, Delmont, NJ, for Appellant.

Michael S. Pushko, Office of Attorney General of New Jersey, Department of Law & Public Safety, Trenton, NJ, James R. Birchmeier, Powell, Birchmeier & Powell, Tuckahoe, NJ, David M. Ragonese, Office of Attorney General of New Jersey, Trenton, NJ, Stephen D. Holtzman, Holtzman & McClain, Linwood, NJ, for Appellees.

Before ALITO, MCKEE and COWEN, Circuit Judges.

## OPINION

PER CURIAM.

Richard A. Guiddy, a *pro se* New Jersey prisoner, appeals the District Court's orders denying his motions for counsel and the District Court's award of summary judgment to the defendants in his 28 U.S.C. § 1983 action alleging inadequate

medical care in violation of the Eighth Amendment. We will affirm in part and remand for further proceedings consistent with this opinion.

## I.

Because we write for the parties, we set forth only those facts and the procedural history relevant to this appeal. While incarcerated at New Jersey's Southern State Correctional Facility ["SSCF"], Guiddy filed this civil rights action against 25 defendants, alleging that each defendant denied him adequate medical care for his hernia condition in violation of the Eighth Amendment and New Jersey law. On January 21, 1999, Guiddy was diagnosed with a reducible inguinal hernia and prescribed one week of "lay-in." Guiddy did not complain of any further problems for the next nine months. After he complained that he felt a "rip" in the area of his hernia in November 1999, he received a truss to wear. Guiddy complained again of pain in December 1999 and eventually consulted Dr. Hertzog, an outside physician, in mid-January 2000, who recommended surgery. When in mid-February he had not yet received a date for his operation, Guiddy submitted a complaint to Quality Assurance Liaison Cathy Payton expressing his concern over the delay, which he discussed with Nursing Supervisor Barbara Roth on March 2, 2000. Roth assured him that she would investigate the delay. Guiddy underwent the scheduled surgery on March 17.

Guiddy remained in the prison infirmary for two days following his surgery. On March 19, Nurse Laura May informed Guiddy that he would soon be discharged from the infirmary. Guiddy protested that he was not yet able to function properly and had felt something inside the surgical site tear while returning from the hospital. Guiddy claimed that she insisted he would be released. The infirmary then returned Guiddy to the prison general population with a wheelchair.

Guiddy then submitted his first Administrative Remedy Form to Assistant Superintendent Gary Schneider complaining of his early discharge from the infirmary. He also claimed that on March 21, 2000 Corrections Officer Thorp confiscated his wheelchair, allegedly at the instruction of Dr. Rovillos, despite Guiddy's protest that he could only walk for short distances without it. That same day, Guiddy complained of swelling and bruising at the site of his hernia surgery. Prison officials then transported him to the emergency room at a local hospital that night, where doctors diagnosed his symptoms as normal postoperative swelling and prescribed Tylenol III. Guiddy asserted that after he returned to SSCF, he was given Motrin instead of Tylenol III. Guiddy again met Nurse Roth on March 27, 2000 to discuss his complaint to Schneider. She arranged for Guiddy to see Dr. Cortes the next day and eventually provided a written response explaining that Guiddy was discharged from the infirmary to accommodate an emergency admission. After the meeting, Guiddy submitted a second Administrative Remedy Form to Schneider complaining of the confiscation of his wheelchair and receiving Motrin instead of Tylenol III.

One week later, Dr. Hertzog examined Guiddy and concluded that the hernia might have returned. He advised Guiddy not to lift heavy items and recommended that Guiddy return in six weeks. Guiddy also claimed that Dr. Hertzog prescribed Percocet for 30 days. That same day, Guiddy was again admitted to the prison infirmary after complaining of groin pain. Guiddy asserted that Nurses Laura May and Judy Trout then repeatedly asked him if he wished to refuse treatment, which he

declined to do. He received Percocet on April 6 and 7, 2000.

Dr. Rosman examined Guiddy on April 7, 2000. Guiddy asserted that during this examination, Dr. Rosman refused to adhere to Dr. Hertzog's prescription of Percocet and complete bed rest and stated to Guiddy that Dr. Hertzog "[doesn't] know how to deal with prisoners ... he [is] only used to dealing with people on the street." Guiddy further alleged that Dr. Rosman then discharged him from the infirmary and returned him to the prison general population. Guiddy's medical records indicate that Dr. Rosman prescribed a five-day "medical lay-in," a prohibition on heavy lifting, squatting, and climbing, and Tylenol III three times daily for five days. The records further indicate that Dr. Rosman extended the Tylenol III prescription for 24 hours after the five days had elapsed. Guiddy submitted a third Administrative Remedy Form to Schneider that day complaining of the cancellation of his Percocet prescription, his discharge from the infirmary, and his constant pain.

After Guiddy consulted another doctor on April 13, 2000, the prison infirmary admitted him the next day, where Nurse Roth and Dr. Rovillos examined Guiddy together. Dr. Rosman then examined Guiddy and ordered blood tests to eliminate other possible illnesses, the results of which later proved negative. Two days later, Guiddy discussed his second administrative remedy form with Nurse Laura May. As documented in her subsequent written response to Guiddy, she explained that an outside physician's medication order is merely a recommendation to the prison medical staff, and that prison physicians administer what they deem appropriate regardless of the recommendation.

Another outside surgeon then examined Guiddy on April 25, 2000 and recommended a second hernia repair surgery, which was scheduled for May 7, 2000. On April 27, Guiddy discussed his third administrative remedy form to Schneider with Nurse Wands. She reiterated to Guiddy that the prison medical staff are not bound by the recommendations of outside physicians and are free to select treatment they deem appropriate. She further informed him that he would be given stronger pain medication after his surgery. After this meeting, Guiddy submitted a fourth administrative remedy form to Schneider complaining that his three previous administrative remedy forms were being forwarded to the same department about which he was complaining. Dr. Hertzog then performed a second hernia repair surgery on May 12, 2000.

Guiddy was thereafter returned to the prison infirmary. Three days later Dr. Rosman ordered that he be released to the prison general population and prescribed a reduced dosage of Tylenol III. On May 24, Guiddy received Balicki's response to his fourth administrative remedy form, in which she explained that she consulted the Quality Assurance Liaison, who informed her that Guiddy's medical needs were adequately being addressed. Guiddy now underscores the fact that Balicki's response noted that he was awaiting his second hernia repair surgery, although she dated the response May 18, six days after Guiddy had already undergone the surgery. About one month later, Guiddy sought medical clearance to resume "power weight lifting," which was eventually granted on February 7, 2001.

Guiddy's June 2001 complaint sought injunctive relief and damages. After screening the complaint before service of process, the District Court dismissed without prejudice Guiddy's claims against several defendants, including Nurse Trout, Nurse May, and Corrections Officer Thorp, for failure to state a claim. The District

Court further denied Guiddy's initial counsel motion and permitted Guiddy to file an amended complaint within 45 days and ordered service of the complaint upon the remaining defendants. Guiddy filed an amended complaint on July 16, 2001 that eliminated Nurse Trout from the caption and from the complaint and further elaborated on his claims against Thorp and May. The District Court apparently did not screen the amended complaint, because the amended complaint was neither dismissed under 28 U.S.C. § 1915(e) nor served upon Thorp and May. Both the prison medical staff defendants and the prison administration defendants ultimately filed motions for summary judgment. The District Court granted both motions and dismissed Guiddy's state law claims without prejudice to his right to file them in state court. Guiddy timely appealed.

On appeal, Guiddy argues that genuine issues of material fact precluded the entry of summary judgment against Dr. Rosman, Balicki, Schneider, Payton, and Nurses Roth, Mays, and Wands. He also argues that Corrections Officer Thorp should be "reinstated" as a defendant and, apparently, that his claim against Nurse Trout should have proceeded to trial. Guiddy concedes in his brief that he does not wish to pursue his claims against the remaining named and unnamed defendants. Finally, Guiddy asserts that the District Court abused its discretion by denying his motions to have counsel appointed and in failing to *sua sponte* appoint counsel.

## II.

We exercise plenary review over a district court's award of summary judgment. *See e.g., Spinetti v. Service Corp. Int'l,* 324 F.3d 212, 215 (3d Cir.2003). Summary judgment is appropriate when there are no genuine issues of material fact and, viewing the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See e.g., Wastak v. Lehigh Valley Health Network,* 333 F.3d 120, 124 (3d Cir.2003). Where the moving party has produced evidence in support of its motion for summary judgment, the nonmoving party cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt. *See e.g., Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.1995).

## III.

To establish a violation of the Eighth Amendment for the denial of adequate medical care, the evidence must demonstrate acts or omissions by prison officials that indicate deliberate indifference to a serious medical need. *See e.g., Natale v. Camden County Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). Contrary to the District Court's finding, Guiddy's hernia condition was sufficiently serious because it was diagnosed by a physician as requiring treatment. *See Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir.2003). We therefore focus upon whether the conduct of the defendants amounted to deliberate indifference.

Finding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official knew of and disregarded an excessive risk to inmate health or safety. *See Natale,* 318 F.3d at 582. He must be both aware of facts from which the inference could be drawn that a substantial risk of harm exists and must draw that inference. *See id.* We have found deliberate indifference where a prison official: 1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; 2) delays necessary medical treatment for non-medical reasons; or 3) prevents a prisoner from receiving needed or recommended treat-

ment. *See Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999). We have also previously held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *See Atkinson,* 316 F.3d at 266).

## A. Claim Against Dr. Rosman

█ Guiddy asserts on appeal that the District Court improperly granted summary judgment to Dr. Rosman regarding his treatment of Guiddy on April 7, 2000. Although the District Court did not address this precise issue, we may affirm on any ground supported by the record. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 109 (3d Cir.2002). Guiddy argued at summary judgment that Dr. Rosman was deliberately indifferent to his hernia condition on that date by refusing to follow Dr. Hertzog's prescription and discharging him from the infirmary, which caused him to endure several days of swelling and intense pain. He cited Dr. Rosman's alleged comment about prisoner medical treatment as evidence of this indifference.

At summary judgment, Dr. Rosman produced Guiddy's medical records, which showed that although he had discharged Guiddy from the infirmary, he ordered a 5–day "medical lay-in" and a 30–day restriction regarding lifting, climbing and squatting. Moreover, the medical records indicate Dr. Rosman had prescribed Tylenol III for five days and then extended Guiddy's prescription for 24 hours following the expiration of that period. A doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990). Guiddy did not produce any evidence suggesting that Dr. Rosman denied, delayed, or intentionally interfered with the administration of this treatment.

Nor is there any evidence in the record indicating this treatment was inappropriate or caused additional harm. *See id.* Despite Dr. Rosman's purported comment, because Guiddy did not produce evidence demonstrating a material fact issue regarding the treatment Dr. Rosman actually prescribed, the District Court appropriately granted Dr. Rosman summary judgment.

## B. Claim Against Karen Balicki

█ Guiddy also argues that the District Court erroneously awarded summary judgment to Karen Balicki because her response to his last administrative remedy form evidences that she did not investigate his alleged problems with the prison medical staff. Specifically, Guiddy cites the fact that she dated the response May 18, 2000 but explained that he was "presently pending surgery for another hernia repair . . . ," (Br. at 22, Appellant's App. at 058), which he had already undergone six days earlier. Regardless of the response's date, Guiddy failed to demonstrate exactly what harm to him Balicki purportedly disregarded. At the time he submitted the remedy form, he had already signed paperwork for his scheduled surgery and ultimately underwent the required surgery within three days. Guiddy's remedy form did not set forth any facts suggesting that he did not receive adequate treatment between April 25, 2000, when an outside surgeon recommended a second hernia repair surgery, and May 9, 2000, the day he submitted the complaint. The last remedy form particularly expressed Guiddy's concerns regarding the procedural manner in which his complaints had been handled, which was unrelated to Guiddy's medical condition at that time. Balicki's response, therefore, does not evidence deliberate indifference to any serious medical need. The District Court accordingly properly granted summary judgment to Balicki.

## C. Claim Against Gary Schneider

■ Guiddy similarly argues that a fact issue exists concerning Gary Schneider's alleged failure to respond to his four administrative remedy forms. However, Guiddy did not present any evidence refuting Balicki's affidavit, which stated that administrative remedy forms addressed to Schneider were forwarded to Balicki for resolution. The record corroborates this assertion. Because liability under § 1983 may not be predicated on a theory of *respondeat superior*, the District Court correctly granted summary judgment to Schneider. *See Plantier*, 182 F.3d at 200.

## D. Claims Against Cathy Payton, Barbara Roth, and Nurse Wands

■ Guiddy also argues that his allegations against Cathy Payton, Supervising Nurse Barbara Roth, and Nurse Wands were sufficient to withstand summary judgment. Guiddy claimed that Payton was deliberately indifferent to his medical needs by refusing to order an immediate operation. Payton's affidavit specifically asserted that she lacked any authority to issue mandates to the staff of the prison medical department. Guiddy did not contradict this point. Further, the record indicates that when Guiddy complained to Payton in mid-February 2000 about receiving his initial operation, she arranged for the medical department's nursing supervisor, Barbara Roth, to discuss his concerns with him. Arranging direct contact with prison medical personnel in response to a complaint of delayed medical treatment hardly amounts to deliberate indifference.

Similarly, the record does not show that Nurses Roth and Wands intentionally interfered with Guiddy's medical care. Nurse Roth informed Guiddy during their discussion on March 2, 2000 that she would investigate any delay in his surgery; Guiddy underwent the operation two weeks later. After he complained of post-operative problems, she arranged for him to see a different prison physician. She also assisted Dr. Rovillos in examining Guiddy after he complained of new problems and agreed that he should be treated immediately. Finally, Nurse Wands' explanation to Guiddy that the prison medical staff reserved the right to pursue different courses of treatment than those recommended by outside physicians does not demonstrate her deliberate indifference. In spite of his allegation that she "refused to administrate over the situation," Guiddy underwent his second surgery three days after his discussion with her. Because the record fails to demonstrate their alleged deliberate indifference, the District Court properly awarded summary judgment to Payton, Roth and Wands. Accordingly, the District Court did not abuse its discretion in denying Guiddy's motions to have counsel appointed because his claims against each of the aforementioned defendants lacked merit. *See Montgomery v. Pinchak*, 294 F.3d 492, 501 (3d Cir.2002).

## E. Claims Against Corrections Office Thorp, Nurse May, and Nurse Trout

Guiddy finally argues that Corrections Officer Thorp should be "reinstated" as a defendant because his allegations against Thorp were sufficient to state an Eighth Amendment claim. He further argues that the District Court improperly granted summary judgment to Nurses Laura May and Judy Trout. Apparently, the District Court never evaluated Guiddy's amended complaint to determine whether to dismiss it as frivolous or direct the U.S. Marshals to serve it. We therefore construe Guiddy's argument on appeal as challenging the District Court's failure to screen his amended complaint, and in the interest of judicial economy, we shall do so now. *Cf. Urrutia v. Harrisburg County Police*

*Dep't,* 91 F.3d 451, 453–54 (3d Cir.1996) (noting that district court must order service of complaint if appropriate amendment cures defects).

 Because Guiddy removed any references to Trout from the amended complaint, we will not consider his prior allegations against her here. Because Guiddy did not allege any facts suggesting that Nurse Laura May prevented Guiddy from receiving any treatment or inhibited his attempts to procure it, the claim against May is meritless. Regarding Corrections Officer Thorp, Guiddy's initial complaint alleged that Thorp confiscated his wheelchair, claiming Dr. Rovillos had ordered its return, and that as a result, Guiddy endured pain while walking. Because these facts do not demonstrate deliberate indifference, the District Court properly dismissed this claim under 28 U.S.C. § 1915. *See Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). His amended complaint added the allegation that Thorp was not acting under any medical order, that Thorp knew depriving Guiddy of the wheelchair would cause him unnecessary pain and suffering, and that Thorp maliciously seized the wheelchair. To the extent that Guiddy has alleged that Thorp maliciously seized the wheelchair without having been instructed to by a doctor for the purpose of causing Guiddy unnecessary pain, this allegation is sufficient to state a claim under the Eighth Amendment.[1] *See White v. Napoleon,* 897 F.2d 103, 109 (3d Cir.1990); *see also Montgomery v. Pinchak,* 294 F.3d 492, 500 (3d Cir.2002). Accordingly, the District Court should have directed service of the amended complaint on Corrections Officer Thorp.

[1]. We note that Guiddy may not have been in a position at the time to know whether any

## IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment as to defendants Dr. Rosman, Dr. Rovillos, Dr. Cortes, Barbara Roth, Ms. Wands, Michael McKeen, Karen Balicki, Gary Schneider, and Cathy Payton. Guiddy's claims against Nurses Trout and May are dismissed. Insofar as the District Court did not evaluate Guiddy's amended claim against Corrections Officer Thorp, we will remand for further proceedings with instructions to direct the service of Guiddy's complaint on him.

such medical order had issued.